| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>S<span style="font-variant:small-caps">AUL</span> E<span style="font-variant:small-caps">WING</span> LLP<br>Jeffrey Hampton, Esquire<br>Mark Minuti (*Admitted pro hac vice*)<br>Turner N. Falk, Esquire<br>Centre Square West<br>1500 Market Street, 38th Floor<br>Philadelphia, PA 19102-2186<br>Office: (215) 972-7777<br>Fax: (215) 972-7725<br>jeffrey.hampton@saul.com<br>mark.minuti@saul.com<br>turner.falk@saul.com<br><br>*Counsel for Allspire Health GPO, LLC* | |
| In re:<br><br>ORBIT ENERGY & POWER, LLC,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 22-19628 (ABA)<br>Judge Andrew B. Altenburg |

**MOTION OF ALLSPIRE HEALTH GPO, LLC FOR AN ORDER (A) ALLOWING POST-PETITION OBLIGATIONS PURSUANT TO 11 U.S.C. §§ 105(A), 365(D)(3) AND 503(B)(1)(A); (B) LIFTING THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(D) TO PERMIT SETOFF OF SECURITY DEPOSIT AGAINST PRE-PETITION DAMAGES; AND (C) WAIVER OF THE STAY UNDER FED. R. BANKR. P. 4001(A)**

Allspire Health GPO, LLC ("AHGPO"), by and through its undersigned counsel, hereby moves for the entry of an order (a) allowing its post-petition claim for post-petition obligations arising under the Sublease (as defined below) pursuant to sections 105(a), 365(d)(3) and 503(b)(1)(A) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"); (b) lifting the automatic stay under section 362(d) of the Bankruptcy Code so that AHGPO may setoff the Security Deposit (defined below) against its pre-petition damages and (c) waiving the stay imposed by Fed. R. Bankr. P. 4001(a). In support of this motion, AHGPO respectfully states as follows:

41204305.6

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105, 362(d), 365(d), 503(b)(1)(A) and 553 of the Bankruptcy Code and Fed. R. Bankr. P. 4001(d).

## BACKGROUND

3. In support of the Motion, AHGPO will rely on the Certification of Michael Forese attached and the exhibits attached hereto.

4. On December 6, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

5. Prior to the Petition Date, EXO PPE, LLC ("EXO") as tenant and 550 Foundry Associates, L.P. were parties to a Lease Agreement dated as of January 19, 2021 (the "Lease") for non-residential real property located at 550 Foundry Road, Suites 3&4, East Norristown, PA 19403 (the "Premises"). A copy of the Lease is attached as Exhibit A to the Claim (as defined below).

6. EXO as sublandlord and the Debtor as subtenant were parties to a Sublease Agreement dated as of January 14, 2022 (the "Sublease") for the Premises. A copy of the Sublease is attached as Exhibit B to the Claim.

7. By the *Assignment and Assumption of Lease and Sublease* dated as of September 19, 2022 (the "Assignment Agreement"), the original tenant and sublandlord, EXO, assigned the

Lease and the Sublease to AHGPO. A copy of the Assignment Agreement is attached as Exhibit C to the Claim.

8. Pursuant to the Sublease, AHGPO is holding a security deposit in the amount of $10,200.00 (the "Security Deposit").

9. The Debtor defaulted under the Sublease prior to the Petition Date and failed to pay rent and other charges due prior to December, 2022.

10. On a post-Petition Date basis, the Debtor owes AHGPO the following amounts (collectively, the "Post-Petition Claim"):

| | |
|---|---|
| Stub rent for December 7 - 31, 2022 | $8,225.81 (the "**Stub Rent**") |
| Estimated Water Bill for December 7-31, 2022 | $163.00 |
| Rent for January 2023 | $10,200.00 |
| Estimated Water Bill for January 2023 | $202.00 |
| Total Post-Petition Amount Due | $18,790.81 |

11. On January 4, 2023, the Debtor filed a motion, pursuant to which the Debtor sought, *inter alia*, to reject the Sublease.

12. On January 31, 2023, the Court entered an order (the "Rejection Order"), *inter alia*, authorizing the rejection of the Sublease under Section 365(a) [Docket No. 138]. The "Effective Date" of the rejection of the Sublease was January 31, 2023. *See* Rejection Order at para. 2.

13. On February 14, 2023, AHGPO filed proof of claim number 84 (the "Claim") asserting a pre-petition claim of, at least, $150,035.86, a portion of which ($10,200.00) was filed as secured based upon AHGPO's possession of the Security Deposit. [Claims Docket No. 84-1].

**RELIEF REQUESTED**

14. By this Motion, AHGPO respectfully requests the entry of an Order (a) allowing its Post-Petition Claim and (b) lifting the automatic stay under Bankruptcy Code section 362(d) so that AHGPO may exercise its right of setoff and apply the Security Deposit to its pre-petition date claims detailed in the Claim and (c) waiver of the 14-day stay imposed by Fed. R. Bankr. P. 4001(d) so AHGPO may exercise setoff immediately.

**BASIS FOR RELIEF REQUESTED**

**I.     AHGPO Is Entitled To An Allowed Post-Petition Claim In The Amount of $18,790.81**

15. Section 365(d)(3) of the Bankruptcy Code provides that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected[.]" See 11 U.S.C. § 365(d)(3).

12. Section 365(d)(3) was enacted to prevent a landlord from being reduced to an involuntary post-petition creditor of a debtor's estate. See Calet Hirsch & Ferell, Inc. v. Microvideo Learning Sys. (In re Microvideo Learning Sys.), 254 B.R. 90, 92 (S.D.N.Y. 1999). Indeed, to avoid such a result, section 365(d)(3)'s clear and express intent is to require a debtor to timely fulfill all post-petition lease obligations until a lease is assumed or rejected. See CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205, 209 (3d Cir. 2001).

13. The law in this Circuit remains that if the a lease rejection occurs on or after the first day of a calendar month, under section 365(d)(3) of the Bankruptcy Code, the Debtor is liable to pay the full month's rent and additional rent. *See, e.g.,* Centerpoint Props. v.

41204305.6

Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205, 211 (3d Cir. 2001) (citing with approval, *inter alia*, In re Koenig Sporting Goods, Inc., 203 F.3d 986 (6th Cir. 2000) (where a lease was rejected on the second day of the month, where rent was due on the first, the Sixth Circuit held that proration would be inconsistent with the Bankruptcy Code as "§ 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent.").

14. The Effective Date of rejection of the Sublease was January 31, 2023. Under the above referenced caselaw, the Debtor is required to pay AHGPO the amount of $10,402.00 representing the post-petition Sublease obligations for rent and water charges accruing under the Sublease for January 2023.

15. Accordingly, the Court should enter an order allowing AHGPO a claim pursuant to Section 365(d)(3) of the Bankruptcy Code in the total amount of $10,402.00.

16. While an administrative claim for "stub rent" may not be allowed under section 365(d)(3) of the Bankruptcy Code, AHGPO does have an allowed administrative claim for the December Stub Rent and water obligations under section 503(b) of the Bankruptcy Code in the total amount of $8,388.81. See, e.g., In re Sportsman's Warehouse, Inc., 436 B.R. 308, 310 (Bankr. D. Del. 2009); In re DVI, Inc., 308 B.R. 703, 708 (Bankr. D. Del. 2004).

17. Section 503(b) of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate[.]" See 11 U.S.C. § 503(b)(1)(A). The priority accorded by section 503(b)(1)(A) obligates debtors to timely pay rent and other amounts owing under a real property lease until the effective date of rejection where a debtor occupies or uses leased property post-petition. See, e.g., Zagata Fabricators, Inc. v. Superior Air Products,

893 F.2d 624, 627-28 (3d Cir. 1990); see also Goody's Fam. Clothing, Inc. v Mountaineer Prop. Co. II, LLC (In re Goody's Fam. Clothing, Inc.), 401 B.R. 656, 673 (D. Del. 2009) ("When a debtor uses a landlord's premises for its post-petition business, this will ordinarily satisfy the requirement that the use be 'necessary'" for purposes of section 503(b)(1)).

18. In the present case, the Debtor is liable for the December 2022 Stub Rent and December pro-rated water charges as an administrative expense claim in the total amount of $8,388.81 pursuant to section 503(b)(1)(A) of the Bankruptcy Code since the Debtor continued to use and occupy the Premises during the month of December. See In re Goody's Fam. Clothing, Inc., 610 F.3d 812, 819 (3d Cir. 2010) (finding that "stub rent" was an administrative expense under section 503(b)(l) where debtor's use and occupancy provided a benefit to the estate); In re DVI, Inc., 308 B.R. 703, 708 (Bankr. D. Del. 2004) (finding clear benefit to estate for purposes of affording administrative expense priority to stub rent claim where debtor not only occupied the property but was able to use it to continue its operations).

19. The Stub Rent claim is further based on the contract rates established for the Debtor's use and occupancy of the Premises, which rates are presumed to reflect the actual and necessary costs of preserving the Debtor's estate. See, e.g., Sportsman's, 436 B.R. at 315 ("The amount of the benefit to the estate is presumed to be the contract rate of rent."); DVI, 308 B.R. at 707-8 (explaining that there is a presumption that the lease rate is the fair market value).

20. Thus, because the December 2022 "stub rent" claim is premised on the Debtor's use of the Premises, which is unquestionably an actual and necessary cost of preserving the estate, the claim qualifies for administrative expense status and should be allowed.

**II.  The Automatic Stay Should Be Lifted Under Bankruptcy Code Section 362(d) So That AHGPO May Setoff Its Security Deposit Against Its Pre-Petition Damages.**

21. The Court should lift the automatic stay to allow AHGPO to exercise its right to setoff the Security Deposit against its pre-petition claims.

22. The right to setoff in bankruptcy cases is governed by Section 553 of the Bankruptcy Code. Section 553 of the Bankruptcy Code does not create any setoff rights, but merely preserves any setoff rights that exist between a creditor and a debtor under applicable non-bankruptcy law as of the commencement of a debtor's bankruptcy case. Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995); In re Benson, 566 B.R. 800, 808 (Bankr. W.D. Va. 2017).

23. "It is well-settled that the automatic stay prohibits the exercise of the right of setoff but does not destroy the right to setoff itself." In re Conti, 50 B.R. 142, 149 (Bankr. E.D. Va. 1985).

24. Section 362(d)(1) of the Bankruptcy Code permits the Court, after notice and a hearing, to grant relief from the automatic stay "for cause". 11 U.S.C. § 362(d)(1). In general, courts have found a creditor's establishment of a right of setoff to constitute a *prima facie* showing of cause warranting stay relief. *See, e.g.,* In re Nuclear Imaging Sys., Inc., 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000); In re Matter of Firestone, 179 B.R. 148, 148 (Bankr. D. Neb. 1995); In re Whitaker, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994); In re Olson, 175 B.R. 30 (Bankr. D. Neb. 1994).

25. Courts have held that a landlord can setoff a security deposit furnished by a tenant to satisfy prepetition claims, including rent arrearages and rejection damages. *See, e.g.,* In re Inslaw, Inc., 81 B.R. at 170 (granting a landlord-creditor relief from the automatic stay to set off the security deposit, transferred by the tenant-debtor, against prepetition arrearage).

26. Here, all of the conditions for setoff under section 553(a) of the Bankruptcy Code are present in that both the Security Deposit and AHGPO's claims detailed in the proof of claim are mutual, undisputed, pre-petition debts.

27. Furthermore, Congress intended the amount of a security deposit to be applied to a landlord's prepetition claims, whether by way of lease arrearages or lease rejection damages. In re PYXSYS Corp., 288 B.R. 309, 319 (Bankr. D. Mass. 2003). The legislative history to section 502(b)(6) of the Bankruptcy Code notes that a "security deposit [held by a landlord] will be applied in satisfaction of the claim that is allowed under this paragraph. H. Rep. No. 95-595, 95th Cong., 1st Sess. 353-54 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 63-64 (1978).

28. Accordingly, the Court should lift the automatic stay, and waive the 14-day stay period otherwise applicable under Bankruptcy Rule 4001(a)(3), to permit AHGPO to immediately apply the Security Deposit against its claims for prepetition lease rejection damages.

[*remainder of this page intentionally left blank*]

WHEREFORE, AHGPO respectfully request that the Court enter an order (i) allowing AHGPO's Post-Petition Claim; (ii) lifting the automatic stay under Bankruptcy Code section 362(d) so that AHGPO may exercise its rights under Bankruptcy Code section 553 to offset the Security Deposit against its pre-petition damage claims; (iii) waiving the 14-day stay imposed by Fed. R. Bankr. P. 4001(a); and (iv) granting AHGPO such other relief as is just and proper.

Dated: March 28, 2023

SAUL EWING LLP

*/s/ Turner N. Falk*
Jeffrey Hampton, Esquire
Turner N. Falk, Esquire
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Office: (215) 972-7777
Fax: (215) 972-7725
Jeffrey.hampton@saul.com
turner.falk@saul.com

Mark Minuti, Esquire (*pro hac vice*)
1201 N. Market Street, Suite 2300
P. O. Box 1266
Wilmington, DE 19801

*Attorneys for Allspire Health GPO, LLC*